IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| REMI DEMBLANS DECHANS, through her parents, LIISA DEMBLANS DECHANS, as parent, guardian and individually, and EMMANUEL DEMBLANS DECHANS, as parent, guardian and individually,<br><br>                Plaintiffs,<br><br>        vs.<br><br>HEALTH CARE SERVICE CORPORATION, A MUTAL LEGAL RESERVE COMPANY, a/b/n/ BLUE CROSS BLUE SHIELD OF MONTANA; and JOHN/JANE DOES I-XX,<br><br>                Defendants. | CV 23–105–M–DLC<br><br><br><br>ORDER |

Before the Court are Plaintiffs' Motion to Compel Discovery (Doc. 29),

Plaintiffs' Motion to Amend/Correct to Allow Punitive Damages (Doc. 45),

Defendants' Motion to Exclude Expert Testimony of Cori M. Zavada, J.D. (Doc.

51), and Plaintiffs' Motion to Strike and Prohibit Previously Undisclosed Defenses

(Doc. 88). The Court held a hearing on the Motions on January 2, 2025.[1] For the

---

[1] At the January 2, 2025 hearing, the Court also heard argument on Plaintiffs'
Motion for Partial Summary Judgment re: Select UTPA Claims (Doc. 79),

reasons herein, Plaintiffs' Motion to Compel (Doc. 29), Plaintiffs' Motion to Amend/Correct to Allow Punitive Damages (Doc. 45), and Plaintiffs' Motion to Strike to Prohibit Previously Undisclosed Defenses (Doc. 88) are GRANTED. Defendants' Motion to Exclude Expert Testimony of Cori M. Zavada, J.D. (Doc. 51) is DENIED SUBJECT TO RENEWAL.

## FACTUAL BACKGROUND[2]

This is an insurance breach of contract and statutory bad faith case. Insured Plaintiffs Emmanuel and Liisa Dechans allege that insurer Defendants breached their contract and acted in bad faith by wrongfully denying coverage of a medication.

## I.    The Insurance Plan, Benefit Book, and Drug List

Defendants sold Emmanuel and Liisa an individual health insurance plan, designated as "Blue Preferred Bronze PPO 202" ("the Plan"). In addition to a copy of the Plan, Plaintiffs were provided with a Benefit Book. Defendants sent Plaintiffs a Benefit Book for each year relevant to this action. On page ten of the Benefit Book, there is a large font section titled "Your Prescription Drug

---

Defendants' Motion for Summary Judgment (Doc. 47), and Plaintiffs' Motion for Partial Summary Judgment (Doc. 52). Because the Court is referring this matter for mediation, it reserves ruling on these motions at this time.

[2] The factual background is derived from the facts to which both parties agree as well as documents in the record to which the Court takes judicial notice.

Coverage." Within that section, the Benefit Book states the following:

> The 2021 Drug List
>
> The drug list is a list of covered medications available to BCBSMT members. If your drug is not on the list, check with our doctor for a covered alternative to consider.
> . . .
>
> Always Check the list.
> . . .
>
> Check to see if your prescription is on the drug list. You may find the drug list at www.bcbsmt.com/member/prescription-drug-plan-information/drug-lists.
> . . .
>
> Log in to your BAM account at www.bcbsmt.com/member to learn more about specific drug coverage on your prescription drug benefit.
> . . .
>
> Finding Out Coverage and Costs for your Drugs
>
> To find out if and how a drug you take is covered, visit www.bcbsmt.com.

The 2021 and 2022 Drug Lists include Kate Farms Standard 1.4 nutritional supplement liquid as a Drug Tier 4 covered drug.

Exclusions and Limitations of the Plan are listed beginning at page 78 of the Benefit Book. There, in small print, the Benefit Book provides:

> All Benefits provided under this Contract are subject to the Exclusions and limitations in this section and as stated under the Benefit section. The Plan will not pay for:
> . . .
>
> 30. Over-the-counter food supplements, formulas, and/or Medical

3

Foods, regardless of how administered except when used for Inborn Errors of Metabolism.

The Plan provides:

**Time of Payment of Claims**

The Plan will pay or deny a claim within 30 days after receipt of a Proof of Loss unless the Plan makes a reasonable request for additional information or documents in order to evaluate the claim. If the Plan makes a reasonable request for additional information or documents, the Plan shall pay or deny the claim within 60 days of receiving the Proof of Loss unless the Plan has notified the Member or the claimant of the reasons for failure to pay the claim in full or unless the Plan has a reasonable belief that insurance fraud has been committed and the Plan has reported the possible insurance fraud to the Commissioner of Insurance. This section does not eliminate a Plan's right to conduct a thorough investigation of all the facts necessary to determine payment of a claim.

The Plan also provides that the insurer will make a determination of: pre-service claims in "no later than 7 days"; urgent claims "no later than 72 hours"; post-service claims "no later than 30 days"; appeals of pre-service "no later than 30 days"; appeals of urgent claims "no later than 72 hours"; and appeals of post-service claims "no later than 60 days." The Plan further provides:

**Claim Forms**

The Plan, upon receipt of a notice of claim, will furnish to the Member, such forms of Proof of Loss for completion by the Member. If the forms are not furnished within 15 days after the giving of such notice, the Member shall be deemed to have complied with the requirements of this Contract as to Proof of Loss upon submitting, within the time fixed in the Contract for filing proof of loss, written proof covering the occurrence, the character, and the extent of the loss for which claim is made.

4

## II. Request for Coverage of Kate Farms

As a minor child of Emmanuel and Liisa, Remi—who is currently 17 years old—was insured under the Plan. Remi has suffered from severe refractory inflammatory bowel disease, Chron's Disease, generalized abdominal pain, and other ulcerative colitis with complications from the time she was around seven years old. These conditions required several hospitalizations between 2015 and 2021. Remi's medical records reveal that her condition affects her gastrointestinal ("GI") function of metabolism and absorption of food, nutrients, and medication. As a result of Remi's condition, she has undergone extensive surgical intervention and requires ongoing medical oversight to manage her malnutrition, low weight, and other metabolic disturbances.

Plaintiffs allege that in 2021, when Remi was 14 years old, she was admitted for surgical procedures at Seattle Children's Hospital. Following the surgery, Remi's medical providers submitted a claim to Defendants for Kate Farms Standard 1.4 enteral nutritional therapy at a required rate of five to six bottles a day. Nine days later, Defendant denied the request for coverage stating "Based on your plan, our records show that the proposed services are not a covered benefit. Because of this, any claims for these services would not be eligible for reimbursement." Defendants did not reference what section of the Plan they relied upon to deny the nutritional therapy nor explain why the therapy was not a covered

5

benefit.

Because Defendants did not cover the therapy, Emmanuel and Lissa purchased the product out-of-pocket.

In 2022, Remi returned to see her pediatric gastroenterologist, Dr. Ghassan Wahbeh, at Seattle Children's Hospital. Her physician directed Remi to continue using the Kate Farms nutritional therapy. On December 21, 2022, Plaintiffs, through counsel, submitted an additional claim—characterized as urgent—requesting that the claim be considered in an expedited manner. The request included a letter from Dr. Wahbeh as well as Remi's medical records.

On February 21, 2023, Defendants responded, characterizing the December 21, 2022 request as an appeal. Defendants stated that the claim met "the criteria for a reconsideration review" and that once the review was completed, Plaintiffs would "receive a new determination letter." On March 1, 2023, Defendants sent a letter again denying coverage for the therapy, stating that the therapy was a "contract exclusion."

## PROCEDURAL BACKGROUND

On June 15, 2023, Plaintiffs filed suit in the Montana Fourth Judicial District Court. (Doc. 1-1.) On September 15, 2023, Defendants removed the case to this Court under diversity jurisdiction, arguing that the amount in controversy exceeded $75,000 because Plaintiffs had spent at least $26,782.44 on the Kate Farms

6

formula, an award of attorney's fees would be at least $50,000, and, because

"Plaintiffs seek . . . punitive damages," an additional $100,000 was in controversy.

(Doc. 1 ¶¶ 14–15.)

On November 16, 2023, this Court issued its preliminary pretrial conference

order. The order required the parties to file a preliminary pretrial statement

addressing all matters listed in District of Montana Local Rule 16.2(b)(1). (Doc.

18.)  Under that rule, a statement must be filed by each party which includes a brief

factual outline of the case, the factual basis of each claim or defense advanced by

the party, and the legal theory underlying each claim or defense. D. Mont. L.R.

16.2(b)(1)(A), (C), and (D).

Defendants' preliminary pretrial statement provided, in relevant part, the

following:

> Plaintiffs' Policy contains a provision titled "Exclusions and
> Limitations," and this provision states that "[a]ll [b]enefits provided
> under this [Policy] are subject to" this provision. The Policy states that
> BCBSMT "will not pay for . . . [o]ver-the-counter food supplements,
> formulas, and/or Medical Foods, regardless of how administered . . . ."
> Because Kate Farms is an over-the-counter formula available by
> ordinary retail purchase through Kate Farms' website, 1 BCBSMT
> properly denied Plaintiffs' June 9, 2021 claim for Kate Farms. For this
> same reason, BCBSMT properly denied December 21, 2022
> submission, which BCBSMT treated as a reconsideration request
> ("Reconsideration"), submitted by Plaintiffs' counsel on their behalf.

(Doc. 21 at 4–5.) Defendants then listed several defenses, including "No

Coverage/Exclusions & Limitations" which stated:

7

> HCSC asserts and alleges that the First Amended Complaint is barred
> in whole or in part because the claims asserted are not covered by any
> insurance or benefit plan(s) at issue herein by virtue of the exclusions
> and limitations contained therein. Under the terms of Plaintiffs' Policy,
> over-the-counter formulas are an excluded service from the Policy and
> Plaintiffs' claim is for Kate Farms, an over-the-counter formula. Thus,
> Plaintiffs' benefits claim was properly denied.

(*Id.* at 6.)

Following the Preliminary Pretrial Conference, Plaintiffs filed a Second Amended Complaint ("SAC")—now the controlling pleading—alleging breach of contract, breach of contractual duty of good faith and fair dealing, and violation(s) of the Unfair Trade Practices Act ("UTPA"). (Doc. 25.)

Thereafter, Defendants filed their Answer, asserting the following affirmative defenses: (1) failure to state a claim upon which relief can be granted; (2) the claim is barred because the claims asserted are not payable under the terms of the Plan; (3) the claims may be barred by their failure to properly or adequately mitigate their damages; (4) the actions about which Plaintiffs complain were required or permitted under law; (5) lack of causation; (6) Defendants had a reasonable basis to deny Plaintiffs preauthorization request and acted in good faith when making its determinations; (7) "Plaintiffs' claims are barred by a failure to satisfy conditions precedent"; (8) Defendants "ha[ve] fully performed its contractual duties under the plan . . . and Plaintiffs are estopped from asserting any cause of action against" Defendants; (9) "Plaintiffs' preauthorization request

would need to be reduced by all applicable terms and conditions of the Plan documents. Any benefits under the Plan would be subject to Plan limitations, offsets, deductions, or adjustments"; (10) "Plaintiffs preauthorization requests for benefits is limited to the lesser of the amount due under the terms of the Plan and the amount actually paid by Plaintiffs"; (11) failure to provide sufficient evidence or to establish entitlement under the Plan; and (12) failure to adequately plead a claim for punitive damages.

Since the preliminary pretrial conference, the parties have filed several motions, including Plaintiffs' motion to compel, Plaintiffs' motion to amend/correct to allow punitive damages, Defendants' motion to exclude expert testimony, and Plaintiffs' motion to strike/prohibit previously undisclosed defenses. The Court now considers these motions in turn.

## DISCUSSION

### I.    Motion to Compel

Plaintiffs' motion to compel seeks an order compelling production of the following Requests for Production ("RFPs"): 2.4, 2.5, 2.6, 2.8. 2.11–2.18, 2.20–2.21, and 3.1. (Doc. 30 at 37.) Plaintiffs also seek Interrogatories 2-2 through 2-6 and 3-1 through 3-4. (*Id.*) Finally, Plaintiffs seek Requests for Admission 3-1, 3-3, 3-4, 3-8, 3-10 through 3-27, 3-29, and 3-35. (*Id.*) Since the motion was filed, Plaintiffs notified the Court that the parties were able to come to a resolution on

some of the discovery disputes, and only need a ruling from the Court on RFPs

2.18, 2.20, 2.21, and 3.1 (Doc. 92 at 2–3.)

## A. Requests for Production in Dispute

### 1. RFP 2.18

RFP 2.18 requests the following:

> For the years 2021 to present, all HCSC guidelines, policies and procedures, including manuals, which discuss each of the following promises of HCSC as set forth in the Plan (see, for example, bates stamp Dechans_v_HCSC 17-132):
>
>     a. To "assist in coordination of the Member's care so that his/her treatment is received in the most appropriate setting for his/her condition" (see bates stamp Dechans_v_HCSC 50);
>
>     b. To "receive the most appropriate care...[and] facilitate a treatment plan...includ[ing]...Member education, referral coordination, utilization review and individual care planning" (see bates stamp Dechans_v_HCSC 54);
>
>     c. To respond to the urgent request by Plaintiffs and the pediatric gastroenterologist, (see bates stamps Dechans_v_HCSC 68);
>
>     d. To respond to the exception request by Plaintiffs and the pediatric gastroenterologist, (see bates stamp Dechans_v_HCSC 68); or,
>
>     e. To "make payment for services which are not listed as a Benefit of this Contract in order to provide quality care at a lesser cost" (see bates stamp Dechans_v_HCSC 88).

(Doc. 30-7 at 23.)

## 2.  RFP 2.20

RFP 2.20 requests the following:

For the years 2021 to the present, all HCSC guidelines, policies and procedures, including manuals, which discuss the following in review/adjusting of requested benefits (as set forth in the Plan or the HCSC Drug List):

 (a)  the HCSC Drug List, as set forth in the Plan (see, for example, bates stamps Dechans_v_HCSC 68);

 (b)  the HCSC Drug List exception process, as set forth in the Plan (see bates stamp Dechans_v_HCSC 68);

 (c)  the HCSC Drug List urgent care requests, as set forth in the Plan (see bates stamp Dechans_v_HCSC 68);

 (d)  the prior authorization process, as set forth in the Plan (see bates stamps Dechans_v_HCSC 53 and 72);

 (e)  Care Management, as set forth in the Plan (see bates stamp Dechans_v_HCSC 54);

 (f)  the Alternate Care, as set forth in the Plan (see bates stamp Dechans_v_CSC 88);

 (g)  Medical Foods, as set forth in the Plan (see bates stamp Dechans_v_HCSC 97);

 (h)  nutritional therapy, as set forth in the Plan;

 (i)  Kate Farms formulas;

 (j)  Over-the-counter and/or non-prescription drugs;

 (k)  Medical Necessity and Medically Necessary, as set forth in the Plan (see bates stamp Dechans_v_HCSC 98);

 (l)  inborn errors of metabolism, as set forth in the Plan or the HCSC Drug List (see bates stamp Dechans_v_HCSC 64);

(m)     the appeal process, as set forth in the Plan (see bates stamps Dechans_v_HCSC 38-9);

(n)     the reconsideration review process, as set forth in the Plan and discussed in your correspondence with Plaintiffs; and,

(o)     the Benefit Book (see bates stamp Dechans_v_HCSC 1-16).

(*Id.* at 25–27.)

### 3.  RFP 2.21

RFP 2.21 requests the following:

All claims manuals, training manuals, guidelines, standard operating procedure, guides, rules, manuals, directives, videos, memorandum, emails, intra- or inter-office memoranda, intra- or inter-office correspondence, PowerPoints, or the like, that discuss, reference or mention: the review, evaluation, handling, adjusting, investigation, approval and/or denial of claims, payment/denial of benefits, the preauthorization of health insurance benefits, the reconsideration process and the appeal process.

(*Id.* at 28.)

### 4.  RFP 3.1

RFP 3.1 requests "For the years 2021 to the present, all Your guidelines, policies an procedures, including manuals, which discuss the following in review/adjusting of requested benefits: (a) the Plan; and (b) to offer a "covered alternative drug." (Doc. 39-11 at 5.)

## B. Defendants' Objections

In addition to Defendants' eight general objections, Defendants objected to

all of the RFPs as overbroad and unduly burdensome, "as seeking documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence and as seeking information that is not proportional to the needs of the case." (Docs. 37-7 at 24, 27–29, 37-11 at 5.)

Defendants objected to RFP 2.18, 2.20, and 2.21 on the grounds that they were "vague and ambiguous, particularly with respect to the phrases 'guidelines,' 'policies,' 'procedures,' and manuals." (Doc. 37-7 at 23–24, 27–28.) Finally, Defendants objected to the RFPs on the basis that they sought confidential and proprietary business information. (*Id.* at 24, 28–29.)

As to RFP 2.18 and RFP 2.20, Defendants also objected on the ground that the requested material was based on Plaintiffs' interpretation of what the booklet states, and therefore Defendants were unaware of what provision Plaintiffs were referring to. (*Id.* at 24, 27–28.) As to RFP 2.21, Defendants further objected on the grounds that the request was "not limited to documents sufficient to demonstrate the basis for the benefits determination made regarding Plaintiffs' preauthorization request for Kate Farms, which was based on the exclusions and limitations section of Plaintiffs' Plan." (*Id.* at 29.)

## C. Analysis

Rulings on discovery issues, including relevance, fall within the Court's broad discretion over case management. *Little v. City of Seattle*, 863 F.2d 681, 685

(9th Cir. 1988). The scope of discovery generally extends to all "nonprivileged matter[s] that [are] relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). For purposes of discovery, relevance is fairly expansive, "encompass[ing] any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Moe v. Sys. Transp., Inc.*, 270 F.R.D. 613, 618 (D. Mont. 2010). "If the information sought might reasonably assist a party in evaluating the case, preparing for trial, or facilitating settlement, it is relevant to the subject matter involved in the pending action." *Id.* The information "need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). A court may act to limit unreasonably cumulative, overbroad, unduly burdensome, or irrelevant discovery. Fed. R. Civ. P. 26(b)(2)(C).

A party that has been unable to obtain requested information absent court involvement may move to compel disclosure. Fed. R. Civ. P. 37(a)(2)(A). The moving party bears the burden of showing that the discovery sought is "relevant", and the party resisting discovery bears the burden of showing that nondisclosure is appropriate. *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995); *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002).

The Court takes an expansive view regarding relevance for purposes of

discovery. The Court views the pending discovery motions with this broader

standard in mind, and finds that RFP 2.18, RFP 2.20, RFP 2.21, and RFP 3.1 are

relevant in that they "might reasonably assist [Plaintiffs] in evaluating the case,

preparing for trial, or facilitating settlement." *Moe*, 270 F.R.D. at 618. The Court

further finds that these requests are proportional to the needs of the case. As such,

Defendants' objection that the RFPs are overbroad unduly burdensome is

overruled.

The Court also overrules the objections to RFP 2.18, 2.20, and 2.21 as vague

and ambiguous. The Court disagrees with Defendants' contention that the RFPS

"request documents well beyond the scope of documents sufficient to demonstrate

the basis for the benefits determination." (Doc. 37 at 27.) The Court further finds

that Plaintiffs' requests are sufficiently specific to allow Defendants to respond.

For the same reasons, the Court overrules the objections to RFP 2.18 and RFP 2.20

as being "based on Plaintiffs' interpretation of what the booklet states."

Finally, the Court overrules Defendants' objections to the RFPs alleging that

the requests seek confidential and business proprietary information. In their brief in

support of the motion to compel, Plaintiffs argue that the parties have entered into

a stipulated protective agreement. (Doc. 30 at 19.) Defendants failed to explain in

their response brief why the stipulated protective agreement was not sufficient to

safeguard their proprietary information. As such, the Court is left with the

conclusion that Plaintiffs are correct in characterizing Defendants' objection as meritless.

In sum, Plaintiffs' Motion to Compel Discovery (Doc. 29) is GRANTED IN FULL. Defendants shall produce the documents requested in RFP 2.18, RFP 2.20, RFP 2.21, and RFP 3.1 on or before February 21, 2025. If the documents have already been produced, Defendants shall inform Plaintiffs of the specific document number.

## II.    Motion to Amend/Correct

The Court next considers Plaintiffs' Motion to Amend/Correct to Allow Punitive Damages (Doc. 45).

Plaintiffs argue that under Rule 15 of the Federal Rules of Civil Procedure, the Court should permit amendment because Defendants would not be prejudiced by the amendment, the amendment is not sought in bad faith, and there has been no undue delay. (Doc. 46 at 10–13.) Plaintiffs further argue that the amendment is not futile because Plaintiffs possess sufficient evidence of malice to permit amendment of their pleadings. (*Id.* at 16.)

In response, Defendants argue that they would be severely prejudiced if Plaintiffs are permitted to file a third amended complaint. (Doc. 97 at 17.) Specifically, Defendants explain that they will need to issue new written discovery, re-depose witnesses, and have its experts submit supplemental reports. (*Id.* at 18.)

In addition, Defendants argue that should the punitive damages claim proceed to trial, they would have no opportunity to move for summary judgment on the claim as the dispositive motion deadline has passed. (*Id.* at 21.)

Defendants also argue that Plaintiffs' attempt to add punitive damages is futile because: (1) Plaintiffs are not entitled to benefits under the contracts; (2) Plaintiffs are not entitled to compensatory damages for violations of the UTPA; and (3) Defendants did not act with malice. (*Id.* at 24-33.)

## A. Analysis

In 2023, the Montana State Legislature passed Senate Bill 169, which precludes litigants from including a claim for punitive damages in initial complaints and sets forth requirements for when amended pleadings are allowed. The legislation—codified at Mont. Code Ann. § 27-1-221(5) (2023)—provides:

> A request for an award of punitive damages may not be contained within an initial pleading filed by a party with the court. At any time after the initial pleading is filed and discovery has commenced in the lawsuit, a party may move the court to allow the party to amend the pleading to assert a claim for punitive damages. The party making the motion may submit affidavits and documentation supporting the claim for punitive damages. A party opposing the motion may submit opposing affidavits and documentation. The court may not allow a party to assert a claim for punitive damages unless the affidavits and supporting documentation submitted by the party seeking punitive damages set forth specific facts supported by admissible evidence adequate to establish the existence of a triable issue on all elements of a punitive damages claim.

The statute went into effect on October 1, 2023.

On September 30, 2024, Judge Brian M. Morris of this Court issued an order

17

finding that the pleading restrictions set forth at § 27-1-221(5) conflict with

Federal Rule of Civil Procedure 8(a) in violation of the *Erie* doctrine. *Dzintars v.*

*Fireman's Fund Ins. Co.*, 2024 WL 4347887 (D. Mont. Sept. 30, 2024). Judge

Morris joined the majority of federal district courts in concluding that the statute

represents a procedural rule. *Id.* at *4. Judge Morris further explained that because

the statute conflicts with Federal Rule of Civil Procedure 8(a)(3)—which permits a

litigant to seek punitive damages in an initial pleading, the Court applies the

Federal "rule—even in the face of a countervailing state rule—as long as it is

constitutional and within the scope of the Rules Enabling Act." *Id.* (citing *In re*

*Cnty. of Orange*, 784 F.3d 520, 527 (9th Cir. 2015)). Judge Morris concluded that

Rule 8(a)(3) does not violate the Rules Enabling Act, and accordingly, where § 27-

1-221(5) conflicts with Rule 8(a)(3), the Rule governs. *Id.* at *5.

This Court agrees with Judge Morris's thoughtful analysis and agrees that §

27-1-221(5) violates the *Erie* doctrine. The Court further finds that because Federal

Rule of Civil Procedure 15 "really regulat[es] procedure," it does not violate the

Rules Enabling Act. *See id.* (quoting *Shady Grove Orthopedic Assocs., P.A. v.*

*Allstate Ins. Co.*, 559 U.S. 393, 407 (2010)). As such, Rule 15 governs Plaintiffs'

Motion to Amend.

Because leave to amend "shall be given freely when justice so requires,"

Rule 15 should be applied with "extreme liberality." *Eminence Capital, LLC v.*

18

*Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Courts must consider four factors when assessing a motion to amend a complaint: (1) bad faith on the part of the party seeking amendment; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment. *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).

### 1. Bad Faith

"In the context of a motion for leave to amend, 'bad faith' means acting with intent to deceive, harass, mislead, delay, or disrupt." *David v. USAA Gen. Indem. Co.*, 2022 WL 22899891, at *5 (D. Mont. Aug. 19, 2022) (quoting *Wizards of the Coast LLC v. Cryptozoic Entertainment,* LLC, 309 F.R.D. 645, 651 (W.D. Wash. 2015)). Defendants do not address this factor and the Court finds no evidence that Plaintiffs are acting in bad faith in filing this motion. Thus, this factor does not weigh against granting leave to amend.

### 2. Undue Delay

Plaintiffs assert that they believed they needed to produce "admissible evidence" of all aspects of their punitive damage claim in order to file the present motion, pursuant to § 27-1-221(5). The Court finds no reason to disbelieve Plaintiffs' assertion that they relied in good faith on § 27-1-221(5). Plaintiffs filed the present motion less than thirty days after Judge Morris's order in *Dzintars*. Defendants do not address this factor, and the Court finds that the circumstances of

this case do not support a finding of undue delay.

### 3. Prejudice

"The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). Defendants have not met that burden here. Defendants were given sufficient notice of Plaintiffs' intention to assert a claim of punitive damages, as evidenced by their own Notice of Removal. (*See, e.g.,* Doc. 1 ¶ 15 ("Here, Plaintiffs seek attorney's fees and punitive damages. . . . HCSC estimates that an award of attorney's fees in this case will be $50,000 and that its punitive damages exposure will be at least $100,000").) Defendants cannot use exposure to punitive damages as an avenue to satisfy the diversity jurisdictional requirement that the amount in controversy exceeds $75,000 and then later claim that they were not given notice that Plaintiffs intended to seek punitive damages. This factor does not weigh against granting leave to amend.

### 4. Futility

"An amendment is futile when no set of facts can be proven under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (internal quotations and citation omitted). In the Ninth Circuit, "[f]utility is analyzed under the same standard of legal sufficiency as a motion to dismiss under

Rule 12(b)(6)." *Lindsay v. World Factory, Inc.*, 2015 WL 1246939, at *7 (D.
Mont. Mar. 18, 2015).

Punitive damages may be awarded where clear and convincing evidence
support an award of compensatory damages and a finding of malice. Mont. Code
Ann. § 27-1-221. Analyzing under the same legal sufficiency as a Rule 12(b)(6)
motion, the Court finds amendment would not be futile.

### a. Compensable Damages

An insured has an independent cause of action against an insurer where the
insurer: "misrepresent[s] pertinent facts or insurance policy provisions relating to
coverage at issue"; refuse[s] to pay claims without conducting a reasonable
investigation based upon all available information"; "fail[s] to affirm or deny
coverage of claims within a reasonable time after proof of loss statements have
been completed"; and "neglect[s] to attempt in good faith to effectuate prompt,
fair, and equitable settlements of claims in which liability has become reasonably
clear." Mont. Code Ann. §§ 33-18-242, 33-18-201(1), (4), (5), and (6).
Compensable damages also include emotional distress damages. *Jacobsen v.
Allstate Ins. Co.*, 215 P.3d 649, 664 (Mont. 2009).

In her deposition, Liisa Dechans testified as to the expenses they have paid
to cover the costs of the Kate Farms Standard 1.4 formula. (Doc. 46-6 at 2.) She
also testified regarding the emotional implications of Defendants' denial of

coverage including anger and loss of sleep. (*Id.* at 3.) Emmanuel Dechans likewise testified that he experienced extreme worries and extreme anger. (Doc. 46-7 at 2.) The Court believes a finder of fact could conclude that clear and convincing evidence supports an award of compensatory damages.

### b. Malice

A defendant is guilty of actual malice if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and:

(a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or

(b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.

Mont. Code Ann. § 27-1-221(2).

Based on the evidence the Court has reviewed, the Court believes a fact finder could find by clear and convincing evidence that Defendants—at the very least—acted with malice under subsection (b). Specifically, the Court believes that a fact finder could reasonably find by clear and convincing evidence that the decision maker that denied the claim for Remi's therapy acted indifferently by denying the claim without referencing the Drug List—which included Kate Farms as a covered drug—resulting in a high probability of injury to Plaintiffs.

Defendants' designated 30(b)(6) deponent, Ami Pillatzke, testified in her deposition that when Defendants denied the requests for coverage of the formula in

22

2021 and 2023, Defendants knew that Remi had complicated irritable bowel disease with severe fistulizing Chron's disease. (Doc. 46-1 at 9.) Pillatzke further testified that Remi had been prescribed the nutritional therapy, and that at the time the 2021 claim was denied, Defendants knew that Remi was moderately malnourished and at risk of hospitalization. (Doc. 46-1 at 9, 18.) At the time the 2023 claim was denied, Remi's treating doctor had submitted a letter explaining Remi's disease and the fact that her condition caused multiple symptoms, including an inability to properly absorb food and nutrients causing significant weight loss. (Docs. 46-1 at 7, 46-3 at 3.) Lexi Gulbranson, another designated deponent, testified that Remi's doctor further explained that "[n]utritional supplementation with the enteral formula has been urgently need[ed] as of my last assessment." (Doc. 46-3 at 4.)

Michelle Redfearn testified that—despite being responsible for deciding whether to approve or deny Plaintiffs' claim—she had never seen the Benefit Book or the Drug List. (Doc. 46-4 at 2.) Pillatzke testified that the clerical employee assisting Redfern, Marta Schmidt, reviewed the Benefit Book on Schmidt's behalf. (Doc. 46-1 at 22.) However, Schmidt testified that she had never seen the Benefit Book or the Drug List, and she is not instructed to look at the Benefit Book or the Drug List as part of her role. (Doc. 46-4 at 2–3.)

Dave Cooper—whom Defendants believe handled Plaintiffs' 2023 claim—

23

testified that he did not handle the 2023 claim, did not determine any exclusions applied to the claim, did not read the contract, did not review the letter from Remi's doctor, and did not review Remi's medical records, and had never seen the Drug List. Cooper testified that someone—whose name he could not recall—had told him that they had determined a benefit exclusion applied. However, Cooper did not know what the exclusion was.

Based on this evidence, the Court believes a fact finder could conclude by clear and convincing evidence that Defendants acted with malice under § 27-1-221(2).

For the above reasons, Plaintiffs' Motion to Amend is GRANTED.

## III.    Motion to Exclude Expert Testimony

"Evidence shall be excluded in limine only when it is shown that the evidence is inadmissible on all potential grounds. Unless evidence meets this high standard, evidentiary rulings should be deferred until trial." *Speaks v. Mazda Motor Corp.*, 118 F. Supp. 3d 1212, 1217 (D. Mont. 2015) (internal quotation marks and citation omitted). Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides that a qualified witness may offer an expert opinion only if:

(a) The expert's scientific, technical, or other specialized knowledge will

help the trier of fact to understand the evidence or to determine a fact in

24

issue;

(b) The testimony is based on sufficient facts or data;

(c) The testimony is the product of reliable principles and methods; and

(d) The expert has reliably applied the principles and methods to the facts of the case.

The Court prefers to hear evidence before conducting a Rule 702 analysis. Therefore, the Court reserves making a final determination as to the admissibility of Corey M. Zevada's testimony as an expert witness until the time of trial. As such, the Court DENIES the Motion to Exclude Testimony subject to renewal.

## IV.    Motion to Strike Previously Undisclosed Defenses

Finally, the Court considers Plaintiffs' Motion to Strike Previously Undisclosed Defenses (Doc. 88).

"Federal Rule of Civil Procedure 8(a) and (c) provide that a defendant's failure to raise an 'affirmative defense' in his answer effects a waiver of that defense." *In re Adbox, Inc.*, 488 F.3d 836, 841 (9th Cir. 2007). However, the Ninth Circuit allows a Defendant to "raise an affirmative defense for the first time in a motion for summary judgment [] if the delay does not prejudice the plaintiff." *Magana v. Com. of the N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997).

Plaintiffs argue that Defendants' contract defense in this matter has consistently been the "over-the-counter" exclusion, and by adding additional

25

defenses in its motion for summary judgment, Defendants have "sandbagged" Plaintiffs. Specifically, Plaintiffs point to the following defenses raised by Defendants in their Motion for Summary Judgment and supporting Brief: (1) prerequisites under the Drug List; (2) that the prescription drug benefit requires an insured request reimbursement within one year of purchase of medication; (3) requirements of "proof of loss" statements; (4) failure to satisfy conditions precedent under the Contract; (5) purchasing Kate Farms nutritional therapy through unapproved pharmacies; and (6) failure to file an appeal on the first denial in June 2021. (Doc. 89 at 10 (citing Doc. 48 at 8–9, 11, 13–17, 21–24).)

In response, Defendants argue that: (1) Plaintiffs' Motion is untimely; (2) Defendants timely disclosed its defenses through its Answer to Plaintiffs' Second Amended Complaint (Doc. 26) and conducted discovery sufficient to put Plaintiffs on notice; (3) Plaintiffs' claim of prejudice is "factually and legally deficient"; and (4) Plaintiffs misapply Rule 9(c) by seeking to impose a heightened pleading standard on Defendants. (Doc. 96 at 7–9.)

### A. Analysis

#### 1. Timeliness and Accusation Regarding Page Limits

As a threshold matter, the Court rejects Defendants' argument that Plaintiffs' Motion to Strike is improper under Federal Rule of Civil Procedure 12(f). Rule 12(f) allows the Court to strike a defense from a pleading. Plaintiffs contend that

Defendants did not provide the disputed defenses in their pleading. Therefore, Rule 12(f) is inapplicable to this dispute.

Defendants' citations to *TDY Industries v. BTA Oil Producers, LLC*, 2019 WL 12661227 (D.N.M. Sept. 5, 2019) and *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., Inc.*, 845 F. Supp. 2d 1241 (M.D. Fla. Jan. 14, 2012), are likewise unpersuasive. Those cases center on the admissibility of exhibits attached to summary judgment briefs, while the dispute here centers on newly raised defenses.

The Court likewise disagrees with Defendants' position that Plaintiffs' Motion to Strike "is yet another attempt to evade the Court's page limitations." (*See* Doc. 96 at 20.) Plaintiffs' Motion does not address the merits of Defendants' Motion for Summary Judgment.

## 2. Disclosure of Defenses

Next, Defendants argue that Plaintiffs were on notice of the challenged defenses and none of Defendants' defenses are new. (Doc. 96 at 21.) Defendants focus this argument on the defense related to requirements of "proof of loss" statements. (*Id.* at 22–24.) Defendants contend that they had to adjust their defenses to account for Plaintiffs' disclosure of information which revealed facts that contradicted their SAC. (*Id.* at 22.)  Specifically, Defendants argue that Plaintiffs represented through the December 2022 letter, and also claimed in their SAC, that the extent of loss was five to six cartons of Kate Farms per day "on an

ongoing basis." (*Id.* at 27.) But in the October 7 and 8, 2024 depositions of

Emmanuel and Liisa, it was revealed that Remi's need for, and consumption of,

Kate Farm diminished dramatically beginning in 2022. (*Id.*) Having reviewed Dr.

Wahbeh's letter and Plaintiffs' SAC, the Court is unpersuaded by Defendants'

argument.

      Dr. Wahbeh's letter, which was attached to the November 15, 2022 letter to

Defendants, states "As of my last assessment, [Remi] was requiring 5-6 cans

daily." (Doc. 78-21 at 2.) Dr. Wahbeh did not provide any indication as to what

Remi's future nutritional needs would be. Likewise, Plaintiffs' SAC states that:

> Beginning in or around 2021, Remi's medical providers ordered and
> prescribed Kate Farms nutritional therapy at a required rate of 5–6
> bottles/day.
>   . . .
> Remi's medical condition discussed herein requires nutritional therapy
> and her medical providers prescribed Kate Farms Standard 1.4, at 5
> bottles/day to meet those needs
> . . .
> On June 9, 2021, while Remi was still hospitalized in Seattle, Remi's
> treating medical providers submitted a claim to Defendant Health Care
> Service Corporation for enteral nutritional therapy, requesting approval
> for Kate Farms Standard 1.4 at 5 bottles/day
> . . .
> On December 21, 2022, Plaintiffs, through counsel, submitted another
> claim . . . supported by medical records and a report from Remi's
> treating pediatric gastroenterologist. . . .The treating pediatric
> gastroenterologist requested approval for 5–6 bottles of Kate Farms
> nutritional therapy per day.

(Doc. 25 ¶¶ 14, 16, 27, 33.) The Court does not see how any of these

allegations could be interpreted to mean that Remi's nutritional needs will

always be between five and six bottles of Kate Farms a day. Indeed, as a health

insurance company, Defendants should have understood that the symptoms of

many health conditions are not static, and therefore doses will often fluctuate.

Defendants also argue that they were forced to add these defenses due to

Plaintiffs' injection of issues into this case through their SAC. (Doc. 96 at 21.)

However, as Plaintiffs highlight, Defendants' Answer to the SAC and their

Preliminary Pretrial Statement were both filed after the SAC. As such, if Plaintiffs

added new issues in the SAC, Defendants opportunity to address those issues was

through their Answer and Preliminary Pretrial Statement.

In addition, Defendants argue that they raised the disputed defenses through

the course of discovery. (Doc. 96 at 15–16.) Defendants do not cite to any caselaw

to support the proposition that an affirmative defense can be asserted through

discovery.

The Court finds that disputed defenses were indeed raised for the first time

in Defendants' motion for summary judgment, and Plaintiffs were not previously

put on notice of those defenses.

### 3. Conditions Precedent and Federal Rule of Civil Procedure 9(c)

Through Defendants' Answer, they did assert an affirmative defense that

"Plaintiffs' claims are barred by a failure to satisfy conditions precedent."

Plaintiffs argue that the affirmative defense was insufficiently pled under the Local

Rules and Federal Rule of Civil Procedure 9(c). (Doc. 121 at 10.)

Local Rule 16.2(b)(1) requires that a preliminary pretrial statement includes "the factual basis of each claim or defense advanced by the party" and "the legal theory underlying each claim or defense, including, where necessary to a reasonable understanding of the claim or defense citations to authority." Meanwhile, Federal Rule of Civil Procedure 9(c) provides that "when denying a condition precedent has occurred or been performed, a party must do so with particularity."

The Court finds that Defendants' seventh defense pled in its Answer does not meet either standard. The statement that "Plaintiffs' claims are barred by a failure to satisfy conditions precent" is not particular. Further, Defendants did not include a factual basis of this defense in its Answer nor its Preliminary Pretrial Statement. (*See* Docs. 21, 26.) Therefore, the Court concludes that Plaintiffs were not put on notice as to Defendants' failure to satisfy conditions precedent defense.

### 4. Prejudice

Having found that Defendants raised the disputed defenses for the first time in their Motion for Summary Judgment, the Court must determine whether the delay in disclosure is prejudicial to Plaintiffs.

Plaintiffs argue that they have focused their discovery, depositions, liability expert analysis, motion to compel, and motion for summary judgment on the

contract defense that that the nutritional supplement was excluded under Exclusion 30.

Defendants, for their part, argue that Plaintiffs fail to make a showing of tangible prejudice. (Doc. 96 at 25.) Defendants analogize this case to *Wright v. Old Gringo Inc.*, 2018 WL 6568199 (S.D. Cal. Dec. 13, 2018), where the court determined that a plaintiff was not prejudiced by a defendant's failure to raise an affirmative defense prior to its motion for summary judgment because the plaintiff had all the facts to determine whether the defense had merit. (Doc. 96 at 26.) In Reply, Plaintiffs distinguish *Wright*, contending that in *Wright* there was no prejudice in the late defense because it related to a legal issue, not a question of fact. (Doc. 121 at 13–14.)

The Court agrees with Plaintiffs that the circumstances of this case are different than those in *Wright*. Here, the new defenses do not raise merely legal questions; rather, Defendants' new defenses place additional limitations on Plaintiffs' ability to enforce their contract. The prejudice to Plaintiffs is readily apparent. For example, as it relates to the "Proof of Loss" defense, Plaintiffs were unable to conduct discovery regarding Proof of Loss Forms or request admissions that the medical records which accompanied the requests for benefits served the same purpose as a Proof of Loss form by providing the necessary information to Defendants. As it relates to Defendants' failure to appeal defense, Plaintiffs were

31

unable to conduct discovery into whether Defendants enforced the nonmandatory appeal in similar situations against anyone other than Plaintiffs.

Ultimately, Defendants wrote the contract, had Remi's medical records over the course of the litigation, knew—or should have known—all of the potential contract defenses under the contract it wrote, and knew—or should have known—of all of the potential defenses when it filed its preliminary pretrial statement. The addition of Defendants' new affirmative defenses would change the scope of the case resulting in prejudice to Plaintiffs. Just as "a plaintiff is not permitted to raise a new or inadequately pled claim at the summary judgment stage without meeting Rule 16(b) and Rule 15(A)'s requirements. . . . A defendant should fare no better." *Hernandez v. Creative Concepts, Inc.*, 295 F.R.D. 500, 505 (D. Nev. 2013) (citing *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006).)

For these reasons, Plaintiffs' Motion to Strike and Prohibit Previously Undisclosed Defenses is GRANTED.

## CONCLUSION

Plaintiffs have met the burden of establishing their entitlement to the disputed discovery requests. Defendants have failed to show that nondisclosure is appropriate. The Court finds that under Federal Rule of Civil Procedure 15, Plaintiffs' motion to amend is appropriate. The Court reserves ruling on Defendants' motion to exclude expert testimony at this time. Finally, the Court

finds that the defenses asserted by Defendants in their motion for summary judgment were not previously disclosed, resulting in prejudice to Plaintiffs. The additional defenses will therefore not be considered by the Court when the Court rules on the pending motions for summary judgment, and Defendants are prohibited from asserting these new defenses at trial.

Accordingly, IT IS ORDERED that Plaintiffs' Motion to Compel (Doc. 29), Plaintiffs' Motion to Amend/Correct to Allow Punitive Damages (Doc. 45), and Plaintiffs' Motion to Strike and Prohibit Previously Undisclosed Defenses (Doc. 88) are GRANTED. Defendants' Motion to Exclude Expert Testimony of Cory M. Zavada, J.D. (Doc. 51) is DENIED subject to renewal.

IT IS FURTHER ORDERED that the trial set for March 10, 2025 and corresponding deadlines are VACATED to be RESET at a later date if necessary.

IT IS FURTHER ORDERED that this matter is referred to United States Magistrate Judge Kathleen L. DeSoto for the sole purpose of conducting mediation. Judge DeSoto shall set the mediation by separate order.[3]

DATED this 10th day of February, 2025.

Dana L. Christensen, District Judge
United States District Court

---

[3] The Court will not rule on the pending Motions for Summary Judgment until after the mediation has occurred in this case. Although it should be clear from the rulings in this Order, the Court will not be granting Defendants' Motion for Summary Judgment (Doc. 47).